**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

VINCENT K.-B.,

                         Plaintiff,

                                                    3:20-CV-157
              v.                                        (DJS)

ANDREW SAUL, *Comm'r of Soc. Sec.*,

                         Defendant.

APPEARANCES:                         OF COUNSEL:

LACHMAN & GORTON                     PETER A. GORTON, ESQ.
Attorney for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761

U.S. SOCIAL SECURITY ADMIN.          AMELIA STEWART, ESQ.
Attorney for Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

**DANIEL J. STEWART**
**United States Magistrate Judge**

### DECISION and ORDER[1]

      Currently before the Court, in this Social Security action filed by Plaintiff Vincent

K.-B. against the Commissioner of Social Security, are Plaintiff's Motion for Judgment

on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 10

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 8 & General Order 18.

& 14.  Plaintiff filed a Reply Brief.  Dkt. No. 17.  Defendant filed a Sur-Reply Brief.  Dkt. No. 20.

For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion for Judgment on the Pleadings is granted.  The Commissioner's decision denying Plaintiff disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.  RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born on April 12, 1985, making him 31 years old on the date he applied for disability, and 33 at the date of the ALJ's decision.  Dkt. No. 9, Admin. Tr. ("Tr."), p. 81.  Plaintiff reported obtaining a GED, as well as BOCES training in culinary arts.  Tr. at p. 193.  He has past work as a general laborer.  *Id.*  Plaintiff alleged disability due to suicidal attempts and homicidal thoughts, panic attacks, personality disorder with cluster B traits, PTSD, Generalized Anxiety Disorder, mood disorder, Depressive Disorder, sleep apnea, back pain with sciatica, and arthritis.  Tr. at p. 192.

### B.  Procedural History

Plaintiff applied for Supplemental Security Income in November of 2016.  Tr. at pp. 169-180.  His application was denied.  Tr. at pp. 95-98.  Plaintiff requested a hearing, and a hearing was held on January 30, 2019 before Administrative Law Judge ("ALJ") Kenneth Theurer at which Plaintiff was accompanied by a representative and testified. Tr. at pp. 30-67.  The ALJ issued a determination on February 8, 2019, finding Plaintiff was not disabled since the date of his application.  Tr. at pp. 7-24.  Plaintiff requested

review of the ALJ's determination, and the Appeals Council denied the request for review

on January 8, 2020.  Tr. at pp. 1-6.  Plaintiff filed his Complaint in this action on February

14, 2020.  Dkt. No. 1.

### C. The ALJ's Decision

In his decision, the ALJ made a number of findings of fact and conclusions of law.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

November 23, 2016, the application date.  Tr. at p. 12.  Next, the ALJ found that Plaintiff

had the following severe impairments: degenerative disc disease of the lumbar spine,

cervicalgia, anxiety disorder, depressive disorder, posttraumatic stress disorder, mood

dysregulation disorder, and personality disorder.  *Id.*  Third, the ALJ found that Plaintiff

did not have an impairment or combination of impairments that meets or medically equals

one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  Tr.

at p. 13.  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

> to occasionally lift and carry twenty pounds; frequently lift and carry ten
> pounds; sit for up to six hours; stand or walk for approximately six hours in
> an eight hour day with normal breaks; occasionally climb ramps or stairs;
> never climb ladders, ropes or scaffolds; and can perform occasional
> balancing, stooping, kneeling, crouching, and crawling.  The claimant
> retains the ability to understand and follow simple instructions and
> directions; perform simple tasks with supervision and independently;
> maintain attention/concentration for simple tasks; regularly attend to a
> routine and maintain a schedule; relate to and interact with co-workers and
> supervisors to the extent necessary to carry out simple tasks-i.e. he can ask
> for help when needed, handle conflicts with others, state his own point of
> view, initiate or sustain a conversation and understand and respond to
> physical, verbal and emotional social cues but he should avoid work
> requiring more complex interaction or joint efforts with co-workers to
> achieve work goals; should have no more than occasional contact with co-
> workers and supervisors; and should have no more than incidental contact
> with the public.  The claimant can handle reasonable levels of simple work-

related stress in that he can make occasional simple decisions directly related to the completion of his tasks in a stable, unchanging work environment.   I define incidental as more than never and less than occasional, simply the job should not involve direct interaction with the public but the hypothetical person does not need to be isolated away from the public.

Tr. at p. 15.  Fifth, the ALJ found that Plaintiff was unable to perform any past relevant work.  Tr. at p. 18.  The ALJ found that Plaintiff was born on April 12, 1985, and was 31 years old, which is defined as a younger individual age 18-49 on the date the application was filed, and that he has at least a high school education and is able to communicate in English.  Tr. at pp. 18-19.  The ALJ found that transferability of job skills is not material to the determination of disability because the claimant's past relevant work is unskilled. Tr. at p. 19.  The ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  *Id.*  Finally, the ALJ concluded that Plaintiff has not been under a disability since November 23, 2016, the date the application was filed.  Tr. at pp. 19-20.

### D.  The Parties' Briefings on Their Cross-Motions

In his Motion for Judgment on the Pleadings, Plaintiff contends that the ALJ erred by (1) failing to address his hospitalizations for suicidal ideation and his chronic suicidal ideation; (2) failing to properly account for limitations to work pace, attendance, and/or dealing with stress; (3) improperly weighing the medical opinions; (4) improperly distinguishing between Plaintiff's ability to interact with co-workers and supervisors and with the public; (5) failing to properly account for Plaintiff's stress; (6) failing to weigh and assess third-party statements; and (7) failing to sustain his Step Five burden.  Dkt.

No. 10, Pl.'s Mem. of Law.  In response, Defendant contends that the ALJ's determination was supported by substantial evidence.  Dkt. No. 14, Def.'s Mem. of Law.

## II.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III.  ANALYSIS

### A.  Plaintiff's Suicidal Ideation

Plaintiff first contends that the ALJ failed to consider Plaintiff's chronic suicidal ideation and his resulting hospitalizations in reaching his determination. Pl.'s Mem. of Law at pp. 8-11.

Initially, the ALJ gave significant weight to the opinion of Dr. Nobel; this opinion recites that Plaintiff alleges suicidal ideations, has a history of inpatient stays, the last of which was in 2015 for suicidal thoughts, and concluded that his severe impairments were specifically due to his depressive symptoms. Tr. at p. 92. The ALJ gave this opinion significant weight because he found it was consistent with the claimant's history of anxiety, depression, and mild irritability as well as his continuing mental health treatment. Tr. at p. 17. The ALJ also gave some weight to Dr. Moore's opinion. Tr. at pp. 17-18. In her opinion, Dr. Moore also recounted Plaintiff's psychiatric history including

numerous psychiatric hospitalizations, including one in 2015 for suicidal ideation, and thoughts of suicide almost daily.  Tr. at p. 543-44.

As such, the opinions the ALJ gave weight to explicitly acknowledged these issues.  In addition, the ALJ describes Plaintiff's psychiatric symptoms, and explains why he does not find them to be disabling.  Tr. at pp. 16-17.  Indeed, the ALJ found depressive disorder to be a severe impairment, and Plaintiff fails to explain why an explicit discussion of his suicidal ideation and hospitalization were critical to the ALJ's determination, or what tie any additional limitation should have to some additional decrease in residual functional capacity.  *See Burgess v. Astrue*, 537 F.3d at 128 (plaintiff "has the general burden of proving that he or she has a disability . . . and bears the burden of proving his or her case at steps one through four").

### B.  Limitations to Work Pace, Attendance, and/or Dealing with Stress

Plaintiff next contends that the ALJ failed to account for limitations to work pace, attendance, and/or dealing with stress.  Pl.'s Mem. of Law at pp. 11-16.  Plaintiff argues that there is no medical opinion that states that Plaintiff has no such limitations.  *Id.* Plaintiff argues that the medical opinions provide moderate or greater limitations on these items, and that the ALJ's analysis does not demonstrate that contrary evidence is overwhelmingly compelling.  *Id.*

In the RFC, the ALJ determined that Plaintiff can

understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact with co-workers and supervisors to the extent necessary to carry out simple tasks-i.e. he can ask for help when needed, handle conflicts

with others, state his own point of view, initiate or sustain a conversation and understand and respond to physical, verbal and emotional social cues but he should avoid work requiring more complex interaction or joint efforts with co-workers to achieve work goals; should have no more than occasional contact with co-workers and supervisors; and should have no more than incidental contact with the public.  The claimant can handle reasonable levels of simple work-related stress in that he can make occasional simple decisions directly related to the completion of his tasks in a stable, unchanging work environment.  I define incidental as more than never and less than occasional, simply the job should not involve direct interaction with the public but the hypothetical person does not need to be isolated away from the public.

Tr. at pp. 14-15.

Regarding the limitations opined by Dr. Nobel, the moderate limitations to which Plaintiff points are contained in the worksheet section of the MRFC, and not the MRFC narrative, which simply provided that "claimant is limited to unskilled work.  He would perform best in a setting with limited ongoing contact with the public or coworkers."  Tr. at p. 92.  As Plaintiff explains, the narrative portion of the form is Dr. Nobel's opinion, and it does not contain any limitations to work pace, attendance, and/or dealing with stress, aside from limiting him to unskilled work and limiting his contact with others.  As such, this opinion supports the RFC's lack of limitations to these items.  *See Poulson v. Berryhill*, 2018 WL 2994390, at *11 (N.D.N.Y. June 14, 2018) (finding ALJ's reliance on agency consultant's additional explanation was appropriate where plaintiff argued it was  potentially inconsistent with findings of moderate impairment in worksheet section).  Moreover, the assessment of Dr. Nobel that Plaintiff has moderate limitations to his abilities in certain of these areas is not necessarily inconsistent with Dr. Nobel's RFC opinion.  *See Lowry v. Comm'r of Soc. Sec.*, 2017 WL 1290685, at *4 (N.D.N.Y. Mar.

16, 2017) ("The ability to maintain a regular schedule falls under the category of concentration and persistence. The Second Circuit has held that a moderate limitation in the area of concentration, persistence, or pace would not necessarily preclude the ability to perform unskilled work.") (internal citation omitted) (collecting cases).  The ALJ accounted for the moderate limitations in maintaining a regular schedule opined by the medical opinions to which he gave weight and the Court does not find error in that determination.  *See*, *e.g.*, *Shannon v. Berryhill*, 2018 WL 6592181, at *3 (W.D.N.Y. Dec. 13, 2018); *Lowry v. Comm'r of Soc. Sec.*, 2017 WL 1290685, at *4-5; *Landers v. Colvin*, 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) ("The determination that Plaintiff is limited to 'simple, repetitive, and routine tasks' accounts for Plaintiff's limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance").

## C.  Weighing of the Medical Opinions

Plaintiff contends that the ALJ improperly gave significant weight to Dr. Nobel and that the ALJ should have given more weight to the opinions of Dr. Moore and Ms. Gil.  Pl.'s Mem. of Law at pp. 16-21.

The ALJ gave Dr. Nobel's opinion great weight, explaining that he is an acceptable medical source with an understanding of the disability program's policies and evidentiary requirements, and that the opinion was "consistent with [Plaintiff's] history of anxiety, depression, and mild irritability as well as his continuing mental health treatment."  Tr. at p. 17.  The ALJ gave Dr. Moore's opinion some weight.  He found, however, that her conclusions regarding Plaintiff's limitations in making work decisions and maintaining a

regular schedule and dealing with stress were based on Plaintiff's subjective complaints, were inconsistent with his presentation during most examinations, and were inconsistent with his varied activities of daily living, many of which involve making decisions, maintaining a regular schedule, and dealing with potentially stressful situations.  Tr. at pp. 17-18.  The ALJ gave little weight to the opinion of Ms. Gil, because she was not an acceptable medical source, she provided no clinical findings or narrative to support her conclusion, and because the opinion was inconsistent with his treatment records and activities of daily living as well as the opinions of Dr. Moore and Dr. Nobel.  Tr. at p. 18.

"[I]t was within the ALJ's purview to review the opinions of record and weigh them accordingly along with Plaintiff's testimony, reports, and treatment history to determine [his] RFC."  *Nesiba O. v. Comm'r of Soc. Sec.*, 2019 WL 464882, at *7 (N.D.N.Y. Feb. 6, 2019) (citing cases).  The ALJ has broad discretion when weighing conflicting evidence in the record.  *Rayder v. Comm'r of Soc. Sec.*, 2016 WL 1090582, at *9 (N.D.N.Y. Mar. 18, 2016) (citing *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)).  The ALJ relied upon valid reasons in discounting Ms. Gil's opinion, in giving varying weight to Dr. Moore's opinion, and in giving significant weight to Dr. Nobel's opinion.  "[T]he opinions of State agency medical consultants[ ] . . . may constitute substantial evidence" as long as those opinions are themselves supported by substantial evidence.  *Monroe v. Comm'r of Soc. Sec.*, 2016 WL 7971330, at *8 (N.D.N.Y. Dec. 29, 2016) (citing *Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir. 1995)).  The Court does not find that the ALJ committed error in weighing the opinions.

### D. ALJ's Distinction Between Ability to Interact with Co-Workers/Supervisors and the Public

Next, Plaintiff contends that it was error for the ALJ to limit Plaintiff to incidental contact with the public, but occasional contact with coworkers and supervisors, without providing any explanation for the difference in treatment.  Pl.'s Mem. of Law at pp. 21-23.  Plaintiff further argues that there is no medical opinion that contains this distinction, and the medical records do not indicate any basis for making the distinction.  *Id.*

Dr. Nobel's opinion provides that Plaintiff "would perform best in a setting with limited ongoing contact with the public or coworkers."  Tr. at p. 92.  Dr. Moore's opinion provided that Plaintiff has a moderate limitation in relating adequately with others.  Tr. at pp. 546-47.  On this record, an RFC providing for the same level of interaction with both the public and coworkers and supervisors, *i.e.*, only occasional contact would be supported by the opinions to which the ALJ assigned weight.  *See*, *e.g.*, *Reilly v. Colvin*, 2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015) ("[G]enerally a limitation to only 'occasional' or 'limited' contact with others has been found sufficient to account for moderate limitations in social functioning.").  Here, however, the RFC contains differing levels of restrictive limitations on interactions, providing for occasional contact with coworkers and supervisors and no more than incidental contact with the public.  The ALJ defined incidental as "more than never and less than occasional, simply the job should not involve direct interaction with the public but the hypothetical person does not need to be isolated away from the public."  Tr. at p. 15.  The ALJ added additional restriction to the category of interacting with the public.  While the ALJ failed to explain the imposition

of differing levels of interaction restrictions, Plaintiff does not provide any argument as to why this additional restriction is harmful.  Despite the lack of an express rationale for the distinction, the ALJ nonetheless found that the more restrictive RFC still permitted Plaintiff to work.  Having arguably restricted Plaintiff more than the record supported, the Court concludes that "the ALJ's failure to offer a specific explanation" for the challenged distinction is at most harmless error.  *LaRock ex rel. M.K. v. Astrue*, 2011 WL 1882292, at *10 (N.D.N.Y. Apr. 29, 2011), *report and recommendation adopted sub nom. LaRock v. Astrue*, 2011 WL 1883045 (N.D.N.Y. May 17, 2011).  The Court does not find this to be a basis to remand.

### E.  Plaintiff's Stress

Plaintiff next argues that the ALJ failed to explain why limiting Plaintiff to simple work properly addresses his problems with stress.  Pl.'s Mem. of Law at p. 24.  Here, the ALJ gave significant weight to Dr. Nobel's opinion, which opined that Plaintiff could perform unskilled work and would perform best in a setting with limited ongoing contact with the public or coworkers, and rejected Dr. Moore's assessment that Plaintiff had marked difficulties in dealing with stress.  Tr. at p. 17.  The ALJ limited Plaintiff to simple tasks with occasional contact with others, and to simple work-related stress.  Tr. at pp. 14-15.

Courts have routinely held that RFC determinations can adequately account for a claimant's stress without specifically referencing a stress limitation.  *Jennifer Lee W. v. Berryhill*, 2019 WL 1243759, at *4 (N.D.N.Y. Mar. 18, 2019) (finding that limiting plaintiff to routine and repetitive tasks and limiting Plaintiff from doing "tasks requiring

- 13 -

public contact or more than occasional interactions with coworkers" accounted for plaintiff's stress) (citing *Clemons v. Comm'r of Soc. Sec.*, 2017 WL 766901, at *6 (N.D.N.Y. Feb. 27, 2017)).  The limitations imposed by the ALJ sufficiently addressed any assessed limitations to Plaintiff's ability to handle stress at work.  *See Steffens v. Colvin*, 2015 WL 9217058, at *4 (W.D.N.Y. Dec. 16, 2015) ("the RFC finding requiring low contact with coworkers and the public adequately accounted for plaintiff's stress"); *see also Natashia R. v. Berryhill*, 2019 WL 1260049, at *12 (N.D.N.Y. Mar. 19, 2019); *Lafond v. Astrue*, 2013 WL 775369, at *12 (W.D.N.Y. Feb. 28, 2013) ("The ALJ adequately accounted for Lafond's limitations in dealing with stress by restricting him to simple and repetitive tasks; no fast-paced production requirements; the necessity of making only simple decisions; and few, if any, changes in the workplace.").  The Court finds no error in the ALJ's handling of Plaintiff's stress.

## F.  Third-Party Statements

Plaintiff asserts simply that "The ALJ acknowledges the third-party statements, but errs in failing to weight them or otherwise address them in forming the RFC" without any elaboration or citation.  Pl.'s Mem. of Law at p. 24.  In his determination, the ALJ recites that

> Catherine Brownell and Michael Kelly, the claimant's parents, have submitted statements regarding the claimant's impairments and functional abilities. They indicate that the claimant has a long history of paranoia, reckless behavior, anger issues, and insomnia and that he is unable to perform basic activities of daily living such as driving a car, shopping, working, and generally being around other people.  They further note that the claimant has had these issues his whole life and that he has a genetic proclivity to have them, as many people in their family have similar health issues.

- 14 -

Tr. at p. 15 (internal citations to the record omitted).  The ALJ also notes that "[t]he claimant testified that he does not have the will to do things while his parents note that the claimant cannot shop or interact well with others.  However, as outlined below, the claimant states that he has been able to live independently and perform a variety of activities of daily living, many of which involve initiative and social interaction."  Tr. at pp. 16-17.  It is clear here that the ALJ, although not explicitly stating what amount of weight he was giving to these statements, did consider them and largely discounted them.  In addition, the opinion to which the ALJ gave weight considered those statements in drawing its conclusions.  Tr. at p. 92 (Dr. Nobel's explanation stating "3RD party function report stated limited interaction with people, does not handle stress well.").  The Court does not find the ALJ's treatment of third party statements to be a basis to remand the determination.  *See Sepulveda v. Berryhill*, 2018 WL 2381887, at *5 (W.D.N.Y. May 25, 2018) ("It is not the law in this circuit that an ALJ is required to state explicitly that he is rejecting corroborating testimony of a claimant's family members and give reasons why.") (citation and internal quotation marks omitted); *Panella v. Colvin*, 2016 WL 1275644, at *5 n.2 (N.D.N.Y. Mar. 31, 2016) ("[T]o the extent that Plaintiff argues that the ALJ erred by not discussing in his written decision the testimony of Plaintiff's family members and others concerning his physical limitations, the Court finds this argument to be without merit.") (citing *Bonet ex rel. T.B. v. Colvin*, 523 Fed. Appx. 58, 59 (2d Cir. 2013)).

### G. Step Five

Finally, Plaintiff contends that the Step Five determination is not supported by substantial evidence because the ALJ's hypothetical did not account for the full extent of Plaintiff's impairments.  Pl.'s Mem. of Law at p. 25.  However, the hypothetical relied upon included the RFC as determined by the ALJ, which the Court has found above to be supported by substantial evidence.  As such, this argument fails.

### IV.  CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED**, that Plaintiff's Complaint is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

Dated:   February 12, 2021
      Albany, NY

Daniel J. Stewart
U.S. Magistrate Judge